UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRYANT ANTHONY BYRD,

                          Plaintiff,

      - v -                                      Civ. No. 9:16-CV-1369
                                                    (FJS/DJS)

JON MILLER,

                          Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

BRYANT ANTHONY BYRD
Plaintiff, *Pro Se*
15-B-3082
Groveland Correctional Facility
7000 Sonyea Road
Sonyea, New York 14556

HON. BARBARA D. UNDERWOOD        MATTHEW P. REED, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Bryant Anthony Byrd brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Dkt. No. 1, Compl. Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Dkt. No. 24. Plaintiff

opposes the Motion. Dkt. No. 28, Plaintiff's Response to Motion for Summary Judgment ("Pl.'s Opp."). For the reasons that follow, the Court recommends **granting** Defendant's Motion for Summary Judgment.

## I. BACKGROUND

The facts underlying this action are largely undisputed.[1] The relevant events arise from Plaintiff's claim that Defendant denied him adequate medical treatment for neurological symptoms that ultimately resulted in a diagnosis of multiple sclerosis ("MS"). *See generally* Compl. From September 9, 2015 until February 24, 2017, Plaintiff was incarcerated at Coxsackie Correctional Facility. Dkt. No. 24-4, Reed Decl., Ex. B. Defendant was employed as a Clinical Physician II at Coxsackie C.F. and was one of the individuals responsible for overseeing Plaintiff's medical care while Plaintiff was housed at Coxsackie. Dkt. No. 24-3, Miller Decl. at ¶¶ 1-2, 5. While Defendant provided medical care and treatment at the facility, in circumstances where outside testing or treatment is necessary referrals for outside testing are submitted by a facility medical provider to outside specialists. *Id.* at ¶¶ 14-15. The facility physician does not have the authority to determine the scheduling of such tests. *Id.*

---

[1] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y. L.R. 7.1(a)(3). Plaintiff has filed a document which, though not labeled specifically as a response to Defendant's Statement of Material Facts, responds with an admission or denial of each of the facts set forth by Defendant as undisputed. See Pl.'s Opp. at pp. 2-11. Plaintiff admits the vast majority of the factual assertions set forth by Defendant. Unless otherwise noted, the facts referenced here are to facts as to which Plaintiff admits there is no dispute.

In November 2015, Plaintiff complained to a nurse at Coxsackie C.F. about numbness in his right foot and leg. Miller Decl., Ex. A² at p. 94. Less than a month later, Plaintiff was again seen by medical staff complaining of numbness in his right arm. *Id*. Plaintiff was put on a list to be seen by a doctor. *Id*. Defendant saw Plaintiff for the first time on December 22, 2015 and following review of Plaintiff's Ambulatory Health Record ("AHR") noted neurological findings on Plaintiff's right arm and leg. Miller Decl. at ¶ 14 & Ex. A. at p. 93. Defendant suspected neuropathy and referred Plaintiff for an electromyogram ("EMG"). *Id*. Defendant also ordered a nerve conduction test of Plaintiff's right upper and lower extremities, x-rays of his cervical spine and lumbar sacral spine, and a biochemical analysis. Miller Decl. at ¶ 17 & Ex. A at pp. 93 & 121.

The requested lab tests were completed on January 5, 2016 and ruled out a number of possible causes of Plaintiff's complaints including lupus, diabetes, and lyme disease. Miller Decl. at ¶ 18. The EMG was completed on January 8, 2016. *Id*. at ¶ 16. A consulting physician, Dr. George Forrest, concluded that peripheral neuropathy was unlikely, but recommended a MRI be performed to rule out myelopathy. *Id*. The spinal x-rays ordered by Defendant were also taken in January 2016. *Id*. at ¶ 21.

On March 25, 2016, Plaintiff again complained of numbness and Defendant referred Plaintiff to a neurology specialist. Miller Decl. at ¶ 23 & Ex. A at pp. 91 & 119. That

---

² Exhibit A to the Miller Declaration contains medical records related to Plaintiff's care. The records are sequentially Bates stamped beginning with Bates page number 45. Citation to this Exhibit throughout this Report and Recommendation shall be to the Bates stamps.

consultation was completed on April 13 and further studies were ordered. Miller Decl. at ¶ 24. The MRI conducted of Plaintiff's brain was normal, but the spinal MRIs showed suspicion of demyelinating disease. Miller Decl. at ¶ 26 & Ex. A at pp. 105-06. Defendant reviewed the MRI results with Plaintiff and referred Plaintiff for another neurology consultation, which occurred less than two weeks later. Miller Decl. at ¶¶ 27-28.

This consultation, performed by Dr. Gerber, a neurology specialist, in June 2016, found a neuro-muscular disease, likely multiple sclerosis. Miller Decl. at ¶ 28. Dr. Gerber ordered additional laboratory testing and follow-up. Miller Decl. at ¶ 28 & Ex. A at p. 118. He also recommended treatment with Rituxan. *Id.* Defendant then referred Plaintiff to Dr. Ritaccio for further neurological consultation. Miller Decl. at ¶ 30. Dr. Ritaccio ordered the Rituxan treatment in August 2016, *id.*, and Defendant referred Plaintiff for that treatment at Albany Medical Center on September 12, 2016. *Id.* at ¶ 42. Plaintiff received the treatment on October 3, 2016 and tolerated it well. *Id.* As a result of continued complaints of weakness, Defendant authorized Plaintiff to use a cane while at Coxsackie. *Id.* In December 2016, Defendant saw Plaintiff and again referred him for continued neurological consultation. *Id.* at ¶ 43. Plaintiff saw Dr. Lynch in February 2017 who recommend that he continue the course of treatment earlier outlined by Dr. Gerber. *Id.* Plaintiff subsequently transferred out of Coxsackie Correctional Facility. *Id.* at ¶ 48.

## II.  LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all

ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992) (*quoting Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim

for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (*quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). For purposes of this Motion, Defendant presumes that MS satisfies this first prong, Def.'s Mem. of Law at pp. 7-8, and so does the Court. *See Rodriguez v. Cty. of Westchester*, 2017 WL 118027, at *9 (S.D.N.Y. Jan. 11, 2017) (citing *Clay v. Morgan*, 79 Fed. Appx. 940, 941 (8th Cir. 2003) for the proposition that a prisoner's "possible" multiple sclerosis constituted a serious medical need).

The second prong of the Eighth Amendment analysis is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Wright v. Genovese*, 694 F. Supp. 2d 137, 154 (N.D.N.Y. 2010) (citing *Chance v. Armstrong*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance v. Armstrong*, 143 F.3d

at 702 (*quoting Farmer v. Brennan*, 511 U.S. at 837).

Plaintiff alleges that Defendant was deliberately indifferent because Plaintiff's consultations and treatment with outside specialists were unreasonably delayed. Compl. at p. 4; Pl.'s Opp. at p. 1. The law is clear, however, that mere "disagreements over . . . the need for specialists *or the timing of their intervention*, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (emphasis added); *see also Vallade v. Fischer*, 2012 WL 4103864, at *6 (W.D.N.Y. Sept. 13, 2012).

In any event the record does not support Plaintiff's claims of indifference.

Looking at the course of treatment Plaintiff received from Defendant, it is clear that it is far from what is required to establish deliberate indifference. Defendant first saw Plaintiff in December 2015. Miller Decl. at ¶ 14. He immediately sought to have a number of tests performed and referred Plaintiff for a consultation with a specialist. *Id.* at ¶¶ 14, 16-17. Over the course of the ensuing months Plaintiff was seen by Defendant on multiple occasions while he was housed at Coxsackie. *See* Miller Decl. at ¶¶ 14, 23, 27, 43, & 46. During this time and as a result of these appointments, Defendant repeatedly referred Plaintiff to neurology specialists, for additional testing, and for treatment. *Id.* at ¶¶ 16-17, 23, 28, 30, 42, & 47. This record clearly shows that the Defendant did not act with reckless disregard to a known substantial risk of harm and as such no deliberate indifference can be established. *Farmer v. Brennan*, 511 U.S. at 836.

The record proffered on this Motion does show that there were delays, sometimes amounting to several weeks, in between referrals by Defendant and when Plaintiff was seen by a specialist or a test or procedure was completed. The parties do not dispute, however, that Defendant, as a referring physician at Coxsackie, did not and could not determine when Plaintiff would be seen by outside specialists. Def.'s Statement of Material Facts at ¶¶ 13-14; Pl.'s Opp. at p. 4 (admitting facts set forth in these paragraphs of Defendant's Statement of Material Facts). This timing, even were the Court to find it unduly long, is not attributable to Defendant and cannot be said to be the type of willful conduct necessary to establish deliberate indifference. *See Bell v. Jendell*, 980 F. Supp. 2d 555, 562 (S.D.N.Y. 2013) ("this case is similar to other cases where prisoners merely allege a delay in the provision of medication of treatment but fail to allege that the delay was either intentional or reckless.") (collecting cases).

Taken together this record establishes that, contrary to Plaintiff's claims, Defendant did provide evaluation and treatment of Plaintiff. Plaintiff was seen by numerous neurology specialists and underwent EMG, MRI, and blood testing, as well as x-rays. This course of evaluation ultimately led to Plaintiff receiving Rituxan treatments which he testified at his deposition were helping his condition. Reed Decl., Ex. A at p. 18. Accordingly, no reasonable factfinder could conclude that there was any delay in Plaintiff's course of treatment that resulted from Defendant's deliberate indifference to Plaintiff's medical needs. *See Amaker v. Coombe*, 2002 WL 523388, at \*8 (S.D.N.Y. Mar. 29, 2002); *see also*

*Williamson v. Goord*, 2006 WL 1977438, at *21 (N.D.N.Y. July 21, 2006).

Plaintiff also alleges that Defendant was deliberately indifferent to Plaintiff's medical needs by refusing to order that he be moved to a flat facility. He claims that the numbness and weakness he was experiencing made moving around Coxsackie Correctional Facility, including navigating stairs, very difficult. Pl.'s Opp. at p. 1. Defendant denies being aware of any request by Plaintiff for a flat facility order. Miller Decl. at ¶ 55. The record does establish that, at the very least,[3] Defendant authorized Plaintiff to use a cane to assist with his mobility. Def.'s Statement of Material Facts at ¶ 48 (noting continuation of Plaintiff's cane permit by Defendant); Pl.'s Opp. at p. 9 (admitting facts set forth in this paragraph of Defendant's Statement of Material Facts). This fact alone suggests a lack of indifference by Defendant to Plaintiff's mobility issues. *See Hawthorne v. Sturgeon*, 2018 WL 4290458, at *3 (N.D.N.Y. Aug. 8, 2018), *report and recommendation adopted, Hawthorne v. Sturgeon*, 2018 WL 4288624 (N.D.N.Y. Sept. 7, 2018) (no culpable indifference found when some response to Plaintiff's complaint of pain was made by medical staff); *White v. Sears*, 2011 WL 2728443, at *6 (N.D.N.Y. June 20, 2011), *report and recommendation adopted*, 2011 WL 2728431 (N.D.N.Y. July 12, 2011) (similar).

While Plaintiff apparently disagrees with the fact that he was not removed from Coxsackie sooner "a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim." *Wright v. Genovese*, 694 F. Supp. 2d at 155. Plaintiff's

---

[3] Defendant also contends that he accommodated Plaintiff by taking him out of a cell located on a upper floor and imposing work restrictions, Miller Decl. at ¶ 54, but Plaintiff appears to dispute these assertions.

complaint that he should have been transferred to a flat facility sooner is such a disagreement about treatment and does not provide a basis for relief. *Alvarado v. Ramineni*, 2011 WL 6937477, at *10 (N.D.N.Y. Dec. 6, 2011), *report and recommendation adopted*, 2012 WL 10493 (N.D.N.Y. Jan. 3, 2012) ("Any allegation that Plaintiff should have been transferred to a flat facility, should have had a no-stairs permit, and should have had a cane throughout his stay at Mid-State, are at most differences in treating opinions and thus do not give rise to an Eighth Amendment violation."); *see also Gillespie v. New York State Dep't of Corr. Servs.*, 2010 WL 1006634, at *6 (N.D.N.Y. Feb. 22, 2010), *report and recommendation adopted*, 2010 WL 1006643 (N.D.N.Y. Mar. 19, 2010) (holding that "the decisions not to give plaintiff a 'lower bunk' pass or order other medical restrictions on plaintiff's work and other activities were all medical judgments and did not deprive plaintiff of constitutionally adequate medical care").

Given that Plaintiff has failed to show that the Defendant acted with deliberate indifference, his Eighth Amendment claims fail as a matter of law. Thus, the Court recommends that the Defendant's Motion for Summary Judgment on this claim be granted.

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 24) be **GRANTED** and this case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation

and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[4] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: September 27, 2018
Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).